IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge R. Brooke Jackson

Civil Action No. 21-cv-00163-RBJ

CANDACE SGAGGIO,

    Plaintiff,

v.

JOHN SUTHERS, in his official and individual capacity,
DON KNIGHT, in his official and individual capacity,
DAVID GEISLINGER, in his official and individual capacity,
RICHARD SKORMAN, in his official and individual capacity,
YOLANDA AVILA, in her official and individual capacity,
JILL GAEBLER, in her official and individual capacity,
BILL MURRAY, in his official and individual capacity,
TOM STRAND, in his official and individual capacity,
WAYNE WILLIAM, in his official and individual capacity,
MARCUS ALLEN, in his official and individual capacity,
TYLER BRESSON, in his official and individual capacity,
NICHOLAS HAMAKER, in his official and individual capacity,
ERIC ANDERSON, in his official and individual capacity,
VINCE NISKI, Chief of Police, in his official and individual capacity,
CITY OF COLORADO SPRINGS, and
JOHN DOES 1-50.

    Defendant.

---

ORDER ON MOTIONS TO DISMISS

---

    This matter before the Court on the individual defendants' motion to dismiss, ECF No. 55, and the City of Colorado Springs's motion to dismiss, ECF No. 56. For the reasons outlined below, both motions are GRANTED.

## I. BACKGROUND

This case involves two incidents that occurred at 1850 North Academy Boulevard in Colorado Springs, which at that time was being used as a house of worship by the GreenFaith Church. Plaintiff Candace Sgaggio owns that building and is a member of that church. The first incident complained of occurred on January 21, 2019. On that day, plaintiff alleges the following: she was at church in the building she owned and engaged in worship when she got a call from a fellow church member who was "running the front door." ECF No. 47 at 6. That member informed her that there was a police officer at the front door insisting that he needed to come in. *Id*. That member also told her the officer had arrested another church member in the parking lot. *Id*. at 7. The police officer present was Officer Marcus Allen. *Id*. He arrived at eight-thirty that evening and stood on the porch requesting entry. *Id.* Ms. Sgaggio alleges that Officer Allen read the no-trespassing sign by the door and then continued to speak with the church member running the door. *Id*. at 8.

She alleges that as a result of Officer Allen's presence on her property, the church was placed on "lock down." *Id*. at 7. Officer Allen's supervisor, Officer Tidwell, then arrived. *Id*. at 13. Plaintiff's husband explained to Officer Tidwell that Officer Allen had been waving church members off, preventing them from entering. *Id*. Officer Tidwell said that members of the church could enter. *Id*. Mr. Sgaggio then spoke to a church member who was in the parking lot; that member told Mr. Sgaggio that he had been in the parking lot for about thirty minutes because Officer Allen had requested that he wait in his car. *Id*. at 14–15.

The second incident occurred on April 20, 2019. Ms. Sgaggio alleges the following: April 20 is a sacred day in the GreenFaith Church, and on that day there was a gathering at the

church to celebrate. *Id*. at 19. Ms. Sgaggio was stationed at the front door when, she alleges, officers blocked the entrance to the church parking lot with their patrol vehicles. *Id*. Those officers were Officers Bresson and Hamaker. *Id*. at 21. Ms. Sgaggio made the decision to lock down the church because she felt that the officers or other government agents might break down the door. *Id*. These events caused Ms. Sgaggio to stop praying and rendered her unable to complete her religious duties. *Id*. at 20. Mr. Sgaggio called the officers' supervisor, Officer Anderson, to complain of this perceived trespass. *Id*. at 24. Officer Anderson informed Mr. Sgaggio that he had recently been on the scene, and that he had observed that customers could still get in and out. *Id*.

Ms. Sgaggio, proceeding pro se, sued the City of Colorado Springs, the mayor, the city council members, the chief of police, and individual police officers under 42 U.S.C. § 1983. ECF No. 1. Her Amended Complaint She alleges eight separate constitutional violations: (1) First Amendment free exercise violation; (2) First Amendment retaliation for religious exercise; (3) Fourth Amendment unlawful search; (4) Fourth Amendment unlawful seizure; (5) Fourteenth Amendment Equal Protection violation; (6) First Amendment freedom of association violation; (7) First Amendment retaliation for association; and (8) First Amendment retaliation for speech. ECF No. 47 at pp. 47–57. Defendants moved to dismiss the complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. ECF Nos. 55, 56.

## II. STANDARDS OF REVIEW

### A. Motion to Dismiss for Failure to State a Claim

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Walker v. Mohiuddin*, 947 F.3d 1244, 1248–49 (10th Cir. 2020) (internal quotation marks omitted). A claim is facially plausible when the plaintiff pleads facts that allows the court to draw the reasonable inference that the defendant is liable for any alleged violation. *Cummings v. Dean*, 913 F.3d 1227, 1238 (10th Cir. 2019) (internal quotation marks omitted). In making this determination, the "court accepts as true all well-pleaded factual allegations in [the] complaint and views those allegations in the light most favorable to the plaintiff." *Straub v. BNSF Ry. Co.*, 909 F.3d 1280, 1287 (10th Cir. 2018).

### B. Pro Se Plaintiff

Plaintiff is proceeding pro se. The Court therefore "review[s] h[er] pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted). Pro se plaintiffs must "follow the same rules of procedure that govern other litigants" and "must still allege the necessary underlying facts to support a claim under a particular legal theory." *Thundathil v. Sessions*, 709 F. App'x 880, 884 (10th Cir. 2017) (unpublished) (citations and internal quotation marks omitted).

"[A] plaintiff requires no special legal training to recount the facts surrounding [her] alleged injury, and [s]he must provide such facts if the court is to determine whether [s]he makes out a claim on which relief can be granted." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir.

1991). A pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Id.* Courts "cannot take on the responsibility of serving as the litigant's attorney in constructing arguments" or the "role of advocate" for a pro se plaintiff. *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005).

### III. THE INDIVIDUAL DEFENDANTS' MOTION TO DISMISS

Ms. Sgaggio asserted claims against two different types of individuals. There are claims against officers on the scene during the two incidents complained of and claims against supervisors in the police department and elected officials. I will address the arguments of each type of individual defendant in turn.

#### A. The On-Scene Officer Defendants

Qualified immunity protects government officials acting in their individual capacities so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Boles v. Neet*, 486 F.3d 1177, 1180 (10th Cir. 2007) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). To determine whether an official is entitled to qualified immunity courts engage in a two-step inquiry. *Id.*; *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). The Court must ask (1) whether plaintiff has sufficiently demonstrated that a constitutional violation occurred; and (2) whether the constitutional right at issue was clearly established at the time of the incident. *Pearson*, 555 U.S. at 232.

In none of Ms. Sgaggio's claims has she sufficiently alleged that a constitutional violation occurred.  The on-scene officers are entitled to qualified immunity and, as a result, Ms. Sgaggio has failed to state a claim.

1.Free Exercise Claim

The First Amendment provides that "Congress shall make no law respecting an establishment of religion"—the Establishment Clause—"or prohibiting the free exercise thereof"—the Free Exercise Clause.  U.S. CONST. amend. I.  The free exercise of religion guaranteed by the First Amendment has been applied to the states via incorporation into the Fourteenth Amendment's Due Process Clause.  *Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940).

To establish a free-exercise claim, a plaintiff must show that the government has placed a burden on the exercise of her religious beliefs or practices.  *See Bauchman v. W. High Sch.*, 132 F.3d 542, 557 (10th Cir.1997).  "A plaintiff states a claim [that her] exercise of religion is burdened if the challenged action is coercive or compulsory in nature."  *Id.*

In neither incident did Ms. Sgaggio plausibly allege that her exercise of religion was burdened.  In the first incident, Ms. Sggagio alleges that Officer Allen approached the church and refused to say why he was there.  ECF No. 47 at 6.  A person at the door of the church refused the officer entry.  *Id.*  As a result of Officer Allen's presence on the property, the church was put on "lock down."  *Id.*  Ms. Sgaggio alleges that this interfered with her practice of religion.  *Id.* at 7, 13.

However, Ms. Sgaggio does not allege that Officer Allen ever entered the church or attempted to enter the church by force.  An officer's presence on the front porch of a church for an unspecified amount of time, where his only actions were to ask several times if he could enter is not sufficient to state a viable claim that an individual's right to practice her religion was burdened.  Though Ms. Sgaggio alleges that an unnamed member of the church was asked to stay in his car, and did so for about a half hour, Ms. Sgaggio's freedom to practice her religion was not burdened by this incident—she was not prevented from entering the church or engaging in worship there.

For the second incident, Ms. Sgaggio's freedom to practice her religion was likewise not burdened.  Ms. Sgaggio alleges that two officers blocked the entrance to the church's parking lot with their patrol vehicles.  ECF No. 47 at 19.  Ms. Sgaggio was in charge of the entrance to the church and made the decision to "lock down" the church.  *Id*.  At that point, she alleges that she had to stop praying and that she was prevented from performing her religious duties.  ECF No. 47 at 20.  She alleges that she was afraid the officers would break down the door.

There was no coercive action in this incident to prevent Ms. Sgaggio from practicing her religion.  In this incident, officers did not approach the church and rather remained in the parking lot.  Once again, Ms. Sgaggio does not allege how long the officers were there.  Even if they were blocking the entrance of the parking lot, as Ms. Sgaggio alleges, she was not prevented from coming to church that day, and she does not allege that the officers were there so long that they prevented her from leaving when she wanted to.  Though Ms. Sgaggio states that she feared the officers would break down the door, she does not allege any facts that would make that fear

reasonable. It was Ms. Spaggio's choice, not government coercion, that resulted in her stopping to pray on this occasion.

    2.    <u>Freedom of Association Claim</u>

There are two types of association protected by the First Amendment: "intimate human relationships" and association for the "purpose of engaging in those activities protected by the First Amendment—speech, assembly, petition for the redress of grievances, and the exercise of religion. *Roberts v. U.S. Jaycees*, 468 U.S. 609, 617–18 (1984). Marriage is the type of intimate relationship that is afforded protection by the freedom of intimate association. *Id.* at 619. The freedom of expressive association affords "protection to collective effort on behalf of shared goals;" i.e., "the right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious and cultural ends." *Id.* at 622. While the right to associate may be restricted to serve compelling state interests, the freedom of expressive association prevents the government from penalizing an individual because of their membership in a disfavored group, from requiring disclosure of an individual's membership in a group seeking anonymity or interfering with the internal organization or affairs of a group. *See id*. at 622–23. To state a claim for violation of expressive associational rights, plaintiff must allege that the officers prevented her from associating with others for protected purposes. *See Boy Scouts of Am. v. Dale*, 530 U.S. 640, 648 (2000).

    Ms. Sgaggio alleges that her intimate association with her husband was interfered with by the officers during the two incidents. In the first incident, Ms. Sgaggio was initially in the church with her husband and then accompanied him into the parking lot to speak with Officer

Allen. She does not allege that he did anything to interfere with her relationship with her husband. In the second incident, Ms. Sgaggio was in the church with her husband when he went to speak to the officers in the parking lot. Ms. Sgaggio has alleged no facts that indicate the intent of these officers was to interfere with her relationship with her husband.

As to the alleged expressive associational violations, Ms. Sgaggio has likewise failed to state a claim. In neither situation did Ms. Sgaggio allege that officers prevented her from associating for a protected purpose. In both incidents complained of, Ms. Sgaggio was already in the church freely associating with others when the officers arrived. In the first incident, she alleges that Officer Allen prevented at least one church member from entering the church. But she does not make more than a conclusory allegation that *she* was prevented from associating to practice her religion. The same is true of the second incident. Though Ms. Sgaggio claims that the officers were blocking the entrance to the church parking lot, she admits that she was already there, freely associating.

In short, Ms. Sgaggio has not alleged facts that plausibly state a claim of violation of either her intimate or her expressional association rights as to the on-scene officers.

    3.    <u>First Amendment Retaliation: Claims Two, Seven, and Eight</u>

To prove that the government has retaliated against a plaintiff for exercise of her First Amendment rights, a plaintiff must show: "(1) that the plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's

exercise of constitutionally protected conduct." *Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007).

Here, Ms. Sgaggio has failed to allege sufficient facts to show that she suffered an injury caused by defendants that would chill a person of ordinary firmness from continuing to engage in the protected First Amendment activity. For the first incident, Ms. Sgaggio alleges that Officer Allen requested entry to her church and stood on the porch and in the parking lot for some amount of time. ECF No. 47 at 7–13. She alleges that one church member was detained in the parking lot, and that the remainder of the church was detained in the church because church members made the decision to "lock down" the church. *Id*. at 7. Ms. Sgaggio's injury, being "detained" in the church, was not caused by Officer Allen. Church members decided to lock down the church—there are no allegations that Officer Allen prevented anyone from leaving. Ms. Sgaggio's alleged detention in the church during the first incident was not caused by any defendant, but rather by her fellow church members. Further, even if this alleged injury was caused by Officer Allen, it is not the sort of injury that would chill a person of reasonable firmness from practicing her religion.

The second incident is much the same. Again, there were officers in the parking lot. She does not allege that they approached the church. Ms. Sgaggio made the decision herself to "lock down" the church, and she alleges that she did so because she feared that the officers might break down the door. *Id*. at 19. Ms. Sgaggio's alleged fear, without any accompanying allegations that would make that fear reasonable, caused her injury, not any actions of the officers.

    4.    <u>Fourth Amendment Claims: Claims Three and Four</u>

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. CONST. amend. IV. "Government conduct can constitute a Fourth Amendment search *either* when it infringes on a reasonable expectation of privacy *or* when it involves a physical intrusion (a trespass) on a constitutionally protected space or thing ('persons, houses, papers, and effects') for the purpose of obtaining information." *United States v. Ackerman*, 831 F.3d 1292, 1307 (10th Cir. 2016) (emphasis in original). "[A]n individual is 'seized' when he has an objective reason to believe that he is not free to terminate his conversation with the officer and proceed on his way." *United States v. Patten*, 183 F.3d 1190, 1194 (10th Cir. 1999) (citation omitted). A seizure of property occurs when there is "some meaningful interference with an individual's possessory interests in that property." *United States v. Jacobsen*, 466 U.S. 109, 113, (1984).

In the first incident, Ms. Sgaggio has not alleged facts sufficient to state a claim that she was unreasonably searched or seized. She claims that Officer Allen's presence on her property was a search. However, she did not allege that any intrusion by Officer Allen was on any constitutionally protected thing or space. Though Ms. Sgaggio alleges that the no-trespassing sign revoked any implied license to approach the door of the church and knock, it does not clearly inform a visitor that they are trespassing when standing on the porch of the church. Ms. Sgaggio cannot plausibly allege that Officer Allen was trespassing as he was walking up to the church through the parking lot. A church is presumptively a place, at least at some times, open to the public. Even assuming that the sign was legible, its placement next to the door implies

that its edict applies to the space on the other side of the sign, not the space in front of it—that is to say, it would appear that the sign was intended to inform readers that if they were to enter the building without the owner's authorization, they would be trespassing.  Officer Allen's actions in knocking on the door did not invade the protected area—he was seeking permission to enter, but did not enter without it, and eventually retreated from the porch.

Likewise, Ms. Sgaggio's person was not seized by Officer Allen's presence on the porch and in the parking lot of the church.  His knocking on the door would not make a reasonable person believe that she was not free to continue on her way.  A police officer's knocking on a door or being present in a parking lot, without more, would not give a reasonable person the impression that she was not free to terminate any interaction with Officer Allen.

Ms. Sgaggio also claims that Officer Allen seized her property, namely the church building and the parking lot.  She claims that there was a material interference with her possessory interest in that property.  However, other than conclusory allegations of this interference, Ms. Sgaggio does not allege facts that would support that claim.  She alleges only that Officer Allen came onto the property, knocked on the door, and after being refused entry several times, returned to the parking lot and stayed for a while longer.  Officer Allen's presence on Ms. Sgaggio's property for an unascertained amount of time was not a material interference with her possessory interest in that property.

For the second incident, Ms. Sgaggio has likewise failed to state a claim to relief that is plausible on its face.  Ms. Sgaggio has not alleged that the officers were on the scene for the purpose of obtaining information.  *See* ECF No. 47 at 19–24.  Without such an allegation, Ms.

Sgaggio's conclusory claims that she or her property was unreasonably searched cannot succeed. Ms. Sgaggio has also not plausibly alleged that she was seized. Though she claims that the officers were blocking the entrance to the parking lot, materials included in the amended complaint belie this allegation.[1] The screenshot Ms. Sgaggio included in her amended complaint to support her allegation that the entry to the parking lot was blocked by police vehicles shows the opposite. *See* ECF No. 47 at 21. In that image, there is enough space between the patrol cars and the unidentified yellow van for cars to enter or exit the parking lot. There are police officers and patrol cars in a parking lot, but cars remain able to enter and exit, a person would not believe that they would be unable to terminate any interaction with these officers by leaving. Further, this is not seizure of Ms. Sgaggio's property. The brief presence of officers on her property, leaving space for vehicles to enter or exit, is not a meaningful interference with her possessory interest in her property.

    5.    <u>Conclusion</u>

For none of her claims against the individual officers has Ms. Sgaggio successfully stated a claim of a constitutional violation for purposes of Rule 12(b)(6). Frankly, the Court finds that her allegations are largely frivolous. The claims against the on-scene officers are dismissed.

---

[1] Generally, a court ruling on a Rule 12(b)(6) motion may consider only the contents of the complaint. *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010). However, a court may consider additional documents that are attached to the complaint or incorporated by reference into the complaint. *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

### B. The Elected Official Individual Defendants and Chief Niski

1. <u>Supervisory Claims Against the Elected Official Defendants, Claims 1–4 and 6–8</u>

Supervisors will generally only be liable in a subordinate's unconstitutional conduct where plaintiff alleges "personal direction or of actual knowledge and acquiescence" in that conduct. *Woodward v. City of Worland*, 977 F.2d 1392, 1400 (10th Cir. 1992); *see also Fogarty v. Gallegos*, 523 F.3d 1147, 1165 (10th Cir. 2008).

I found above that Ms. Sgaggio failed to allege that the subordinates in this case, the on-scene officers, engaged in any unconstitutional conduct. As a result, Ms. Sgaggio has likewise failed to state a claim under a supervisor liability theory for the elected official defendants and Chief Niski.

2. <u>Equal Protection Claims Against the Elected Official Defendants: Claim Five</u>

Plaintiff alleges she is "a member of a protected class" and that the elected official defendants violated her right to equal protection under Fourteenth Amendment. ECF No. 47 at 52–53. To sustain a claim under the Equal Protection Clause, a plaintiff must provide evidence that she was treated differently from others who are similarly situated to her, and that the acts forming the basis of the plaintiff's claim were motivated by a discriminatory purpose. *See Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 272–74 (1979).

Ms. Sgaggio has not alleged that the acts complained of were motivated by a discriminatory purpose. She contends that she has "searched throughout all Colorado Springs newspapers, and [has] never seen this type of conduct happen[ing] to white owned religious organization" or any religious organization that was majority white. ECF No. 47 at 46. The amended complaint is bare of non-conclusory allegations that any of the elected official

defendants were motivated by a discriminatory purpose in their actions or lack of actions regarding the incidents complained of.  Again, I find that the claim is frivolous.

## IV.   THE CITY'S MOTION TO DISMISS

To state a claim for municipal liability, a plaintiff must identify a "government policy or custom" that caused an injury.  *Monell v. Department of Social Services*, 436 U.S. 658, 691–92, 694 (1978).  "Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Id*. at 691.  The plaintiff must allege that the policy was a result of deliberate indifference to an "almost inevitable constitutional injury." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769 (10th Cir. 2013).

I found above that Ms. Sgaggio has not plausibly alleged that she suffered any constitutional violation.  She has failed to state a claim against the City.

### ORDER

1. The individual defendants' motion for to dismiss for failure to state a claim, ECF No. 55, is GRANTED.

2. The City's motion to dismiss for failure to state a claim, ECF No. 56, is GRANTED.

3. This case is DISMISSED with prejudice. As the prevailing party, defendants are awarded costs to be taxed by the Clerk pursuant to Fed. R. Civ. P. 54(d)(1) and D.C. COLO. LCivR 54.1.

DATED this 31st day of March, 2022.

BY THE COURT:

_____
R. Brooke Jackson
Senior United States District Judge