IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge R. Brooke Jackson

Civil Action No.  21-cv-00163-RBJ

CANDACE SGAGGIO,

     Plaintiff,

v.

JOHN SUTHERS, in his official and individual capacity,
DON KNIGHT, in his official and individual capacity,
DAVID GEISLINGER, in his official and individual capacity,
RICHARD SKORMAN, in his official and individual capacity,
YOLANDA AVILA, in her official and individual capacity,
JILL GAEBLER, in her official and individual capacity,
BILL MURRAY, in his official and individual capacity,
TOM STRAND, in his official and individual capacity,
WAYNE WILLIAM, in his official and individual capacity,
MARCUS ALLEN, in his official and individual capacity,
TYLER BRESSON, in his official and individual capacity,
NICHOLAS HAMAKER, in his official and individual capacity,
ERIC ANDERSON, in his official and individual capacity,
VINCE NISKI, Chief of Police, in his official and individual capacity,
CITY OF COLORADO SPRINGS, and
JOHN DOES 1-50.

     Defendant.

---

## ORDER ON MOTION FOR RECONSIDERATIION

---

     Plaintiff moves for reconsideration of this Court's order of March 31, 2022 granting

defendants' motions to dismiss.  ECF No. 73.  I have reviewed the motion, the videos that are

addressed in the motion, defendants' response, and plaintiff's reply.  For the reasons set forth

herein, the motion is denied.

## I.    BACKGROUND

As set forth in the Court's order referenced above, the case involves two incidents that

occurred at 1850 North Academy Boulevard in Colorado Springs, which at that time was being

used as a house of worship by the GreenFaith Church.  Plaintiff owns the building and is a

member of that church.  On January 21, 2019, plaintiff was at the church building engaging in

worship when a fellow member informed her that there was a police officer at the front door

insisting that he needed to come in, and that the officer had arrested another member in the

parking lot.  Ms. Sgaggio alleges that officer, Marcus Allen, read a no-trespassing sign by the

door but continued to speak with the church member at the door.

She further alleges that as a result of Officer Allen's presence on her property, the church

was placed on "lock down."  Officer Allen's supervisor, Officer Tidwell, arrived.  Plaintiff's

husband explained to Officer Tidwell that Officer Allen had been waving church members off

and preventing them from entering.  Officer Tidwell said that members of the church could enter.

However, another church member who was in the parking lot told plaintiff's husband that he had

been in the parking lot for about thirty minutes because Officer Allen had requested that he wait

in his car.

Plaintiff also alleges that April 20 is a sacred day for the GreenFaith Church.  On April

20, 2019, while there was a gathering at the church to celebrate, officers allegedly blocked the

entrance to the church parking lot with their patrol vehicles.  Those officers were Officers

2

Bresson and Hamaker.  Ms. Sgaggio decided to lock down the church because she felt that the

officers or other government agents might break down the door.  As a result, she stopped praying

and could not complete her religious duties.  Her husband called the officers' supervisor, Officer

Anderson, to complain about a trespass.  However, Officer Anderson responded that he had

recently been at the scene, and that he had observed that church members could still get in and

out.

Ms. Sgaggio, proceeding pro se, sued the City of Colorado Springs, the mayor, the city

council members, the chief of police, and individual police officers under 42 U.S.C. § 1983.

ECF No. 1.  Her Amended Complaint asserts eight constitutional violations: (1) First

Amendment free exercise violation; (2) First Amendment retaliation for religious exercise; (3)

Fourth Amendment unlawful search; (4) Fourth Amendment unlawful seizure; (5) Fourteenth

Amendment Equal Protection violation; (6) First Amendment freedom of association violation;

(7) First Amendment retaliation for association; and (8) First Amendment retaliation for speech.

ECF No. 47 at pp. 47–57.

The individual defendants and the City of Colorado Springs filed separate motions to

dismiss the complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim.  The Court found

that the individual officer defendants who were at the scene during the two alleged incidents

were entitled to qualified immunity.  ECF No. 65 at 5-13.  The Court found that plaintiff had not

stated a claim upon which relief could be granted against the elected official defendants or Chief

Niski.  *Id.* at 14-16.  Finally, the Court found that plaintiff had not stated a viable claim for

municipal liability against the City of Colorado Springs under the tests set forth in *Monell v*

*Department of Social Services,* 436 U.S. 658, 691-92, 694 (1978) and *Schneider v. City of Grand Junction Police Dep't,* 717 F.3d 760, 769 (10th Cir. 2013).

Accordingly, the Court granted the motions to dismiss.  *Id.* at 15-16.  The Court entered its Final Judgment on the same day.  ECF No. 66. On April 13, 2022 defendants filed a motion for an award of attorney's fees.  ECF No. 67.  That motion, which has been fully briefed, is pending, and it is not addressed in this order.

On April 24, 2022 plaintiff filed a notice of appeal.  ECF No. 68.  On April 28, 2022 plaintiff filed a motion asking the Court to reconsider its motion to dismiss.  ECF No. 73.  Believing that the appeal deprived the Court of jurisdiction, defendants did not immediately respond.  *See* ECF No. 80 at 1.  However, the United States Court of Appeals for the Tenth Circuit has recently issued an order abating plaintiff's appeal pending this Court's decision on the motion for reconsideration.  ECF No. 81.  Thereafter defendants filed their response to the motion for reconsideration, ECF No. 80, and the plaintiff filed her reply.  ECF No. 82.

## II.    STANDARD OF REVIEW

The Federal Rules of Civil Procedure do not explicitly provide for motions for reconsideration.  After judgment has entered in a case, such motions are "generally accepted and construed under Federal Rules of Civil Procedure 59(e) and 60(b)."  *Montano v. Chao*, 07-CV-00735-EWN-KMT, 2008 WL 4427087, at *5 (D. Colo. Sept. 28, 2008).  "On the other hand, where a party files a motion for reconsideration prior to the entry of judgment, Rules 59(e) and 60(b) do not apply."  *United Fire & Cas. Co. v. Boulder Plaza Residential, LLC*, 06-CV-00037-PAB-CBS, 2010 WL 420046, at *3 (D. Colo. Feb. 1, 2010).  "Instead, the motion falls within a court's plenary power to revisit and amend interlocutory orders as justice requires."  *Id*.

4

A motion to reconsider should only be granted following (1) an intervening change in the controlling law, (2) new evidence previously unavailable, or (3) the need to correct clear error or prevent manifest injustice. *See Alpenglow Botanicals, LLC v. United States*, 894 F.3d 1187, 1203 (10th Cir. 2018). "Thus, a motion for reconsideration is appropriate where the court has misapprehended the facts, a party's position, or the controlling law." *Lyons v. New Mexico Dep't of Corr.*, 12 F. App'x 772, 773 (10th Cir. 2001) (unpublished) (internal citation omitted). However, a motion to reconsider is not to be used to "reargue issues by rehashing facts and arguments already addressed or available, yet neglected, in the original proceeding." *Jaffrey v. Portercare Adventist Health Sys.*, No. 15-CV-02297-NYW, 2017 WL 3437986, at *2 (D. Colo. Aug. 10, 2017).

## ANALYSIS AND CONCLUSION

The motion cites two videos: A video taken by Delbert Sgaggio of Marcus Allen on January 21, 2019, designated by plaintiff as "Exhibit 3;" and a video taken by Delbert Sgaggio of Marcus Allen and Supervisor Tidwell, also taken on January 21 2019, designated by plaintiff as "Exhibit 4." The videos have been provided to the Court. Plaintiff states that the videos "show undisputable evidence that my building was secured my [sic] multiple cops and Marcus Allen," and that "access was denied for religious members." ECF No. 73 at 1-2. The motion cites and quotes or summarizes cases addressing warrantless seizures but makes no further argument other than that which I have quoted.

As an initial matter, defendants argue that the Court should not consider the videos. Defendants cite and quote *Servants of Paraclete v. Does,* 204 F.3d 1005, 1012 (10th Cir. 2000) for the proposition that ("the basis for [a motion for reconsideration] must not have been available at the

time the first motion was filed.".  ECF No. 80 at 1-2.  Defendants note that the videos were available

to the plaintiff when she filed her Amended Complaint and when she filed her response to it.  Indeed,

plaintiff's husband took the videos.  I agree that the videos were available to plaintiff previously.

They do not constitute new evidence previously available.  However, courts consider pro se litigants'

pleadings liberally.  A liberal construction here is that the videos show that the Court committed clear

error in its analysis of the motion to dismiss.  Accordingly, I have reviewed them.  Plaintiff's reply

reemphasizes the significance that she attaches to the videos and urges the Court to allow her to

proceed with a jury trial on her Fourth Amendment claims.  ECF No. 82 at 3-5.

Next, I find that the videos provide no ground for reconsidering the order to the extent that

the Court dismiss plaintiff's claims against the elected officials, Chief Niski, and the City of

Colorado Springs.  The videos concern the actions of the officers at the scene, particularly Officer

Marcus Allen and Sgt. Tidwell.

Third, I remind the parties that in considering the motion to dismiss, I was required as a

matter of law to assume the truth of plaintiff's allegations of fact.  That remains the case with respect

to the motion for reconsideration.  Thus, for example,

- I assume the truth of plaintiff's allegations that the building where the January 21,
  2019 incidents took place was plaintiff's building and was a church; and that Officer
  Allen came to the door of the building and told a man at the door that he should open
  the door; and that Officer Allen did not say why; and that Officer Allen arrested a
  member of the church in the parking lot.  *Id.* at 6.  I do not, however, assume the truth
  of the conclusory allegation that Officer Allen " did show up at my property . . . to

search, seize, harass, intimidate, fish, retaliate, detain, and restricted individuals from their spiritual and religious establishment." *Id.* at 7.

- I assume the truth of the allegation that there is a "clearly posted sign that states Government Agents without search warrants are trespassing," but I do not assume the truth of the allegation that Officer Allen ignored the sign, or that he knew the building was a church, or that "[h]is actions did show he had control over my property." *Id.*

- I assume the truth of the allegation that Officer Allen did not have a warrant but not the truth of the conclusory allegation that he "committed a search and seizure." *Id.*

- I assume the truth that plaintiff got into a verbal altercation with Officer Allen, but I do not assume the truth of the allegation that plaintiff was forced to do so. *Id.*

- I assume the truth that the verbal altercation was recorded by "both body camera and personal cell phone video, and that Officer Allen did not leave the property and parked his squad car on the property, but I do not assume the truth of allegation that this was a trespass. *See id.* at 8.

- I assume the truth of the allegation that Officer Allen detained individuals inside the church, *id.* at 9, and that plaintiff's husband told Officer Allen's supervisor, Officer Tidwell "so if you guys would just leave.  Because you've already terrorized every individual inside.  You've terrorized all the individual volunteers.  Oh you know he's waving members off, and stuff like that.  That's against the law dude, you can't do that shit." *Id.* at 13.  I assume the truth of the allegation that Officer Tidwell

responded, "This individual here if he's a member of your establishment, he is
allowed to go in.  I am OK with him going inside."  *Id.*

- I assume the truth of the allegation that plaintiff's husband asked the gentleman
whose picture is shown in the Amended Complaint at page 14, "how long have you
been stuck out here bro?"; and that the individual responded, "at least ½ hour
probably," and that the gentleman added "I pulled up and he (Defendant Allen) said
wait in the car for a minute.  I didn't want to cause any problems so I waited in my
car.  I just wanted to respect his orders.  I did not want any problems."  *Id.* at 14-15.  I
do not, however, assume the truth of the conclusory allegation that "Defendant Allen
took control of my property."  *Id.* at 15.

I first viewed the video designated as Exhibit 4 because it was said to have occurred first.
The video records plaintiff's husband's briefly confronting Office Dagastino (phonetic), not a
named defendant, who is attempting to explain why the officers are there.  Sgt. Tidwell, also not
a named defendant, arrives and explains that the officers were looking for a missing at risk adult
who supposedly was last seen there, and that they believed it was a public building that they
could enter for that purpose.  He states, however, that the officers had not entered the building
because they had been told they could not go in.  Plaintiff's husband seems to know who the
officers are looking for, but he indicates that the individual is not in the building, and that he had
not been permitted to enter because he did not have proper identification.  The video confirms
the statements made by the husband to Sgt. Tidwell and the statements made by the individual
pictured at page 14 of the Amended Complaint that I have quoted above.  I already assumed the
truth of plaintiff's allegations that those statements had been made.  Otherwise, the video

consists of plaintiff's husband's comments to the effect that he believed that the officers were there to retaliate and to interfere with religious activity, and the husband's statements that there would be a lawsuit.  Sgt Tidwell was at all times calm, polite, and non-confrontational.  There is nothing in this video that supports a claim of interference with religious rights or an improper search or seizure or that officers took control of the property.

I then reviewed the video designated as Exhibit 3.  It begins with plaintiff's husband's accusing Officer Allen, who is a named defendant, and who is standing outside the building, of trespassing, his needing a warrant, and a threat to sue him.  Officer Allen attempts to explain that they are there to look for a missing individual.  He is accused of waving someone off the property, and he denies that he waved anyone off the property.  There are references to the sign about trespassing and government agents' needing a warrant.  Officer Allen did not enter the building.  Rather, he returned to his patrol car, and he remained standing outside.  Plaintiff's husband accuses him and the officers generally of intimidating and persecuting a religion.  However, the video does not support that.  In the video Officer Allen is calm, polite, and non-confrontational.  The video confirms certain facts that I have assumed to be true, but it does not show an effort to control the property, to intimidate, to interfere with religious activity or improperly to search or seize persons or property.  I understand that plaintiff interprets the videos differently, but I have considered them carefully, and the foregoing is my interpretation of them and their significance to the issues presented.

### ORDER

Having reviewed the videos as requested, I find nothing in them that supports an argument that the Court committed clear error in its granting of the motion to dismiss. Therefore, the motion for reconsideration, ECF No. 73, is DENIED.

DATED this 15th day of July, 2022.

BY THE COURT:

_____
R. Brooke Jackson
Senior United States District Judge